Cowgill *v.* Faulconer, Exr.

[Cite as Cowgill v. Faulconer (1978), 57 Ohio Misc. 6.]

(No. 15,133—Decided March 15, 1978.)

Highland County Common Pleas Court, Probate Division.

*Messrs. Dennis & Cartwright Co., L. P. A.,* and *Mr. John L. McElwee,* for plaintiff.
*Mr. Robert B. McMullen,* for defendant executor.
*Ms. Mary Lou Wagstaff,* for defendant Carolyn Cowgill Mason.

Davis, J. This matter is before the court for construction of the will of Martha C. Lyle, deceased. Items 10 and 13 are in question.

*Item 10.*

"I give and devise to John T. Faulconer for and during the period of his natural life only, my farm of 161 acres, more or less, and known as the 'Cowgill Home Farm.'

"At the death of said John T. Faulconer, or if he does not survive me, then at my death I give and devise the said 161 acre 'Cowgill Home Farm' in equal shares to the children of my deceased brother, Clarence Cowgill, and to the children of my brother, Parker Cowgill."

*Item 13.*

"All the rest, residue and remainder of my estate, real and personal, of every kind and description, wheresoever located, which I may own or have the right to dispose of at the time of my death, I give, bequeath and devise in equal shares to the children of my deceased brother, Clarence Cowgill, and to the children of my brother, Parker Cowgill, who survive me, share aand share alike."

Martha C. Lyle's brother Clarence Cowgill had six children: Harry, Donald, Roderick, Sarah, Thomas and Frank. Frank preceded testatrix in death, leaving a daughter, Brenda Marie Shaffer. The other children were living at Martha C. Lyle's death, but Harry has died since, on January 26, 1978, leaving three children.

Martha C. Lyle's brother, Parker Cowgill, had four children: Joseph, Mary Jean, Paul, and John. All were living at Martha C. Lyle's death.

*Issue A:* Under Item 10, do the children of Clarence Cowgill and Parker Cowgill take *per capita* or *per stirpes?*

Wills should be liberally construed in order to give effect to testator's intention, but if the language is clear and the testator's intention can be ascertained from it, the express provision of the will must control and it will be presumed that the testator intended what the will says. *Steinbrenner* v. *Dreher* (1942),) 140 Ohio St. 305, 43 N. E. 2d 283. The intention to be determined by the court in a will construction case is not the intention which existed in the mind of the testator, but that which is expressed by the language of the will. The question is not what the testator should have done, but what he did do, and what he meant

by the words he actually employed. *Cope* v. *Cope* (1887), 45 Ohio St. 464.

Item 10 devises the "Cowgill Home Farm" after the life estate of John T. Faulconer to a class of persons in equal shares, to wit: the children of her deceased brother, Clarence Cowgill and to the children of her brother, Parker Cowgill. The devise in clear and concise language is not to Clarence Cowgill or Parker Cowgill. It is not to the heirs of Clarence Cowgill or Parker Cowgill. It is to one class of persons identified by reference as the children of a deceased brother and a living brother. The equal shares refers to what each of the children in the class receive and not to equal shares the brothers are to receive, because the brothers receive nothing, nor do their children receive through them.

This construction is consistent with the well established Ohio rule that a gift to a class calls for a *per capita* distribution. *Jones* v. *Lewis* (1941), 70 Ohio App. 17. A class of beneficiaries designated by their relationship to some ancestor living at the date of the will, whether to the testator or to someone else, they share *per capita* and not *per stirpes*, especially if they are all of the same degree. *Broermann* v. *Kessling* (1914), 6 Ohio App. 7.

Thus, each of the children of Clarence Cowgill and Parker Cowgill takes said property in equal shares.

*Issue B*: Under Item 13, do the children of Clarence Cowgill and Parker Cowgill take *per capita* or *per stirpes?*

This is the residuary clause and designates the beneficiaries with the same language used in Item 10, but adds: "who survive me, share and share alike." This language, as in Issue A requires a *per capita* distribution, but changes the identity of the class of beneficiaries to those persons who survive testatrix. Those "who survive me" refers to the members of the class who survive, rather than the survivors of the deceased members of the class. *Sinton* v. *Boyd* (1869), 19 Ohio St. 30.

*Issue C*: Does Ohio's Anti-Lapse Statute (R. C. 2107.-52) apply to Item 10?

The Anti-Lapse Statute does apply and saves the de-

vise of Frank Cowgill in Item 10 for his daughter, Brenda Marie Shaffer, even though Frank died before Martha C. Lyle executed her will. The devise to Harry Cowgill is likewise saved for his surviving issue by said Anti-Lapse Statute. *Shumaker* v. *Pearson* (1902), 67 Ohio St. 330.

*Issue D*: Does Ohio's Anti-Lapse Statute (R. C. 2107.-52) apply to Item 13?

The Anti-Lapse Statute does not apply to Frank Cowgill in Item 13 because the testatrix has expressly denied its application by limitation of the class of beneficiaries to those "who survive me." *Shalkhauser* v. *Beach* (1968), 14 Ohio Misc. 1, 233 N. E. 2d 527. Since Frank did not survive testatrix, there is no share of Item 13 to either Frank or his daughter, Brenda Marie Shaffer.

However, Harry did survive testatrix. He is included in the class. The Anti-Lapse Statute does apply to save his share for his three children.

*Issue E*: Under Item 10, do the children of Clarence Cowgill and Parker Cowgill take vested remainders as of the death of Martha C. Lyle?

The law favors early vesting. Rights of remaindermen vest at testator's death. *Ohio National Bank of Columbus* v. *Boone* (1942), 139 Ohio St. 361. The remainder interests of the children of Clarence Cowgill and Parker Cowgill vested at the death of Martha C. Lyle and they need not survive the life tenant to take the devise.

Counsel for plaintiff moved in open court for attorney fees to be made a charge against the estate. The findings that all parties' interests vested at death of testatrix and that the Anti-Lapse Statute applies to save Frank Cowgill's share under Item 10 have benefited others beside plaintiff are cited to support the claim. However, neither of these issues was contested as well as the issue that the Anti-Lapse Statute did not apply in Item 13 except as to Harry and his children.

This was basically a complaint for will construction between the plaintiff, one of a class of six children and a class of four children for a *per capita* rather than a *per stirpes* distribution to increase plaintiff's shares in the

estate. The court has found that plaintiff's contention is legally correct and has awarded him a larger share of the estate as a consequence. The other children of the same class as plaintiff were not joined as parties plaintiff, but were defendants who also benefited from this ruling. However, the shares of the other four children were diminished.

The court has carefully considered the few cases which bear upon this subject. They suggest that if all interested in the estate are benefited equally, they should all bear the attorney fees. They suggest that where others benefit, they should not be unjustly enriched. But this court does not believe that those whose shares have been diminished should also be required to contribute to such attorney fees. It would appear that it is in the sound discretion of the court to determine in each case if the facts and circumstances warrant the expense of attorney fees paid from the assets of the estate.

It is therefore ordered that plaintiff shall pay his own attorney fees, that they shall not be a charge against the estate. Plaintiff's motion for attorney fees is overruled.

The court costs of the action to construe the will are a charge upon the estate.

*Judgment accordingly.*