DECISION
Defendant-appellant Ruth Weaver has appealed from the judgment of the trial court under case number C-990611. The remaining appellants have appealed from the judgment of the trial court under case number C-990626. We have sua sponte consolidated these cases for appeal.
 Background
On January 2, 1998, Jack H. Weaver died, leaving a last will and testament that had been executed on April 10, 1995. Richard Nurre, who was named the executor of the Weaver estate, applied to have the will admitted to probate on January 20, 1998. On May 6, 1998, Nurre filed with the Probate Division of the Hamilton County Court of Common Pleas a complaint for construction of the will, claiming that Item II of the will was ambiguous.
Weaver never married and died without issue. He disposed of his residuary estate in Item II of his will as follows:
 I give, devise and bequeath all the rest, residue and remainder of my estate, whether real, personal or mixed, and wheresoever located, and either that I now own or may hereafter acquire to all of my nieces and nephews, members of the Weaver family living at the time of my death, including but not limited to James H. Weaver, Jr., Ruth Weaver, Eloha[1] Zuefle, Phyllis Boldman, Dorothy Weaver and Mrs. Tom Spurlock.
There were nine nieces and nephews living at the time of Weaver's death. Of those nine, four were named in the will: James H. Weaver, Jr., Elpha Zuefle, Phyllis Boldman, and Mrs. Tom Spurlock, also known as Dolores Keyser Spurlock. None of the appellants is a niece or nephew of the decedent. Ruth Weaver is a sister-in-law who claims an interest in the estate because she was also named in Item II. Deborah Keyser Ball, Phyllis Keyser Hoffman, Maree Keyser Hewey, and Teresa Keyser Talyor-Eddy are Weaver's grandnieces. Their father, Richard E. Keyser, was Weaver's nephew, who had died in 1989, before Weaver executed his will. The grandnieces claim they are entitled to receive per stirpes their father's share of the Weaver estate by operation of the Anti-Lapse Statute, R.C. 2107.52. Dorothy Weaver, also named expressly in Item II of the will, was another of Weaver's sisters-in-law. She predeceased Weaver, and her estate is not a party in this matter.
On April 26, 1999, the trial court held a hearing to construe Item II of the will. At the hearing, Nurre, the executor, testified that he was also the scrivener of the will. As the scrivener, Nurre met with Weaver to ascertain how he wanted to dispose of his estate. Nurre testified that Weaver had wanted only his nieces and nephews who were alive at the time of his death to inherit his estate. Weaver provided to Nurre orally a list of names of those persons believed by Weaver to be his nieces and nephews. Weaver could not remember all the names of his nieces and nephews and incorrectly named Ruth Weaver and Dorothy Weaver as his nieces.
Nurre testified that, approximately ten days after meeting with Weaver, Nurre had returned with the will prepared and ready for execution. Nurre testified that he had read the will to Weaver, and that Weaver had had no objection to the disposition of his estate as set forth in the will. Nurre also believed that Weaver, at the time of his execution of the will, had the proper testamentary capacity. As further evidence of Weaver's testamentary intentions, the Weaver estate introduced a prior will that had been executed by Weaver in 1983.
On July 30, 1999, the court, in a written opinion and entry, concluded that Weaver had intended to leave his residuary estate only to the class of nieces and nephews living at the time of his death and to no others. The court found that Ruth Weaver was not a member of that class, so she was not entitled to any portion of the estate. Further, the court found that the grandnieces were not members of the class of nieces and nephews entitled to take under the will, because the testator had set forth survivorship language in the will that precluded the operation of the Anti-Lapse Statute, R.C. 2107.52.
The Ruth Weaver Appeal
In Ruth Weaver's first assignment of error, she claims that the trial court erred when it excluded her from sharing in the Weaver estate, because she was expressly named in the will. Since this case involves the construction of a will, we conduct a de novo
review of the record. See Church v. Morgan (1996), 115 Ohio App.3d 477,685 N.E.2d 809.
The sole purpose of construing a will is to determine and carry out the intention of the testator. See Tootle v. Tootle (1986),22 Ohio St.3d 244, 247, 490 N.E.2d 878, 881, citing Townsend'sExrs. v. Townsend (1874), 25 Ohio St. 477. The intention of the testator is determined by the words in the will. See Oliver v.Bank One Dayton, N.A. (1991), 60 Ohio St.3d 32, 34, 573 N.E.2d 55,58. And the will must be construed in its entirety, with "effect, if possible, given to every word contained in it." Townsend'sExrs., supra, paragraph four of the syllabus; see, also, Cowgillv. Faulconer (P.C. 1978), 57 Ohio Misc. 6, 385 N.E.2d 327. Central to this analysis is that
 the intention to be determined by the court in a will construction case is not the intention which existed in the mind of the testator, but that which is expressed by the language of the will. The question is not what the testator should have done, but what he did do, and what he meant by the words he actually employed.
(Emphasis added.) Id. at 7-8, 385 N.E.2d at 329, citing Cope v.Cope (1887), 45 Ohio St. 464, 15 N.E. 206; see, also, Johnson v.Johnson (P.C. 1984), 13 Ohio Misc.2d 15, 468 N.E.2d 945. Only when the language of the will creates doubt as to its meaning may the court look beyond the express provisions of the will, by way of extrinsic evidence, to ascertain the testator's intentions. See Oliver, supra, at 34, 573 N.E.2d at 58; Church, supra.
In a will, "when [a] gift is made to persons designated by name, that is individually[,] it is a gift to them as individuals, and not as a class, even though the persons designated may constitute a class * * *." Kovar v. Kortan (P.C. 1965), 3 Ohio Misc. 63, 66,209 N.E.2d 762, 765-766, citing Jewett v. Jewett (1900), 21 Ohio C.C. 278, 12 Ohio C.D. 131, affirmed (1903), 67 Ohio St. 541,67 N.E. 1098. There is no question that Ruth Weaver was expressly named as a devisee in Item II of Weaver's will. Therefore, we sustain Ruth Weaver's first assignment of error and hold that Ruth Weaver is entitled to share in the Weaver estate.
In the second and third assignments of error, Ruth Weaver claims that the trial court erred in admitting extrinsic evidence to interpret a will provision, and that the trial court erred in admitting a prior will to establish the intention of the testator. Because of our resolution of the first assignment of error in favor of Ruth Weaver, we hold that the admission of extrinsic evidence was harmless. Therefore, the second and third assignments of error are overruled.
In Ruth Weaver's fourth assignment of error, she claims that the trial court erred in failing to grant her summary-judgment motion. A court may grant summary judgment only when the moving party demonstrates that the record is devoid of genuine issues of material fact, and that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. See Civ.R. 56(B); see, e.g., Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115, 526 N.E.2d 798, 801; Dresher v. Burt (1996), 75 Ohio St.3d 280,293, 662 N.E.2d 264, 274. Where there are no disputed factual issues, summary judgment is properly granted to avoid a formal trial; however, the trial court may grant summary judgment only after construing the evidence in favor of the nonmoving party. See Norris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1,2, 433 N.E.2d 615, 616; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267, 274. An appellate court reviews the record de novo to determine whether the party moving for summary judgment has met its burden. See id.; Wille v. HunkarLaboratories, Inc. (1998), 132 Ohio App.3d 92, 724 N.E.2d 492.
As we stated in our resolution of the first assignment of error, there is no dispute that Ruth Weaver was an expressly named beneficiary in the will. Under these circumstances, the record is devoid of any genuine issues of material fact regarding whether Ruth Weaver was entitled to share in the Weaver estate. Consequently, the probate court erred when it denied Ruth Weaver's motion. Therefore, we sustain this assignment of error.
Because we sustain Ruth Weaver's first and fourth assignments of error, the decision of the probate court as to Ruth Weaver is reversed. We remand this matter to the probate court for a determination of Ruth Weaver's proper share in the Weaver estate.
The Grandnieces' Appeal
We now turn our attention to the appeal brought by the grandnieces. Although no "assignments of error" designated as such are set forth in the brief filed by the grandnieces, we construe the argument in their brief to, in effect, set forth two assignments of error: (1) The trial court erred in finding that the language found in Item II of Weaver's will precluded operation of the Anti-Lapse Statute; and (2) The trial court erred when it determined that the phrase "members of the Weaver family" was superfluous.
We now examine Item II of Weaver's will. The language of Item II at issue states,
 I give, devise and bequeath all the rest, residue and remainder of my estate * * * to all of my nieces and nephews, members of the Weaver family living at the time of my death, * * *
(Emphasis added.) Members of a class are determined as of the date of the death of the testator. See Provident Sav. Bank Trust Co. v. Nash (1945), 75 Ohio App. 493, 62 N.E.2d 736; see, also, Central Trust Co. of Northern Ohio, N.A. v. Smith (1990),50 Ohio St.3d 133, 553 N.E.2d 265. Since Richard E. Keyser predeceased Weaver, he was obviously not alive at the time the class of nieces and nephews was to be determined. Thus, the probate court correctly concluded that the Anti-Lapse Statute did not apply to save a devise that could not have gone to Richard E. Keyser anyway. Therefore, neither the estate of Richard E. Keyser nor his heirs are entitled to share in Weaver's estate.
The grandnieces also argue in their brief that an ambiguity exists due to the following language in Item II: "members of the Weaver family living at the time of my death." In a broad sense, this phrase could be construed to include the grandnieces as members of the Weaver family.
A court may reject superfluous words in a will when necessary to effectuate the testator's intentions. See Fifth Third Union TrustCo. v. Anthenaeum of Ohio (1959), 84 Ohio Law Abs. 208,169 N.E.2d 707. The will in this case, considered as a whole, makes it apparent that Weaver intended that his nieces and nephews, plus those persons expressly named in the will, share in his estate. Were we to construe the language "members of the Weaver family" in the context urged by the grandnieces, Weaver would have had no reason to draft a will. Such a statement would have been tantamount to an intention by Weaver that his estate be distributed as though he had died intestate. We do not believe that was Weaver's intention. Therefore, we hold that the phrase "members of the Weaver family living at the time of my death" conveys words of survivorship that preclude operation of the Anti-Lapse Statute. See Tootle, supra, paragraph two of the syllabus; see, also, Cowgill, supra; Day v. Brooks (P.C. 1967),10 Ohio Misc. 273, 224 N.E.2d 557.
Although the phrase at issue was poorly drafted as a means to effectuate Weaver's intention, we hold that the probate court correctly found superfluous the words "members of the Weaver family." The remaining language, "living at the time of my death," is unchanged and relates back to limit the class of nieces and nephews to only those who survived Weaver.
Based upon the foregoing, we overrule the grandnieces' two assignments of error and affirm the judgment of the probate court excluding the grandnieces from sharing in the Weaver estate.
Conclusion
Because Ruth Weaver was expressly named in the will as a devisee, we reverse the probate court's judgment as to her and remand the case so that the probate court may determine her proper share of the Weaver estate. Having determined that the probate court properly held that the grandnieces could not share in the Weaver estate, we affirm the balance of the judgment entered below.
Judgment affirmed in part and reversed in part, and causeremanded.
 _________________________ WINKLER, Judge.
 Gorman, P.J., and Sundermann, J., concur.
[1] The correct name, as identified in court documents, is Elpha.